**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

LESTER GARCIA ROMAN,

      Petitioner,

v.                                                                            No. 2:26-cv-00803-DHU-KRS

KRISTI NOEM, Secretary for the Department of
Homeland Security; MARKWAYNE MULLIN,
Acting Secretary for the Department of Homeland
Security; PAMELA BONDI, in her official capacity
as Attorney General of the United States; TODD
LYONS, Acting Director, Immigration and Customs
Enforcement; MARY DE ANDA-YBARRA, in her
official capacity as Regional Director, Field Office
Director of Enforcement and Removal Operations;
and DORA CASTRO, in her official capacity as
Warden, Otero County Processing Center,

      Respondents.

**ORDER GRANTING PETITIONER'S EMERGENCY MOTION FOR A
TEMPORARY RESTRAINING ORDER**

THIS MATTER is before the Court on Petitioner's Emergency Motion for a Temporary

Restraining Order ("TRO").[1] Doc. 2. For the reasons set forth below, Petitioner's request for a

temporary restraining order is **GRANTED IN PART**.

**I.
PROCEDURAL BACKGROUND**

On January 15, 2026, Petitioner was detained by Immigration and Customs Enforcement

("ICE") outside of the Executive Office for Immigration Review ("EOIR") in El Paso, Texas, after

---

[1] Petitioner's Motion is titled "Emergency Motion for Preliminary Injunction." Doc. 2 at 1.
However, the Motion states that Petitioner's Motion is being made pursuant to Rule 65(b), which
governs temporary restraining orders. *Id.* at 2. Accordingly, the Court treats Petitioner's Motion
as one for a temporary restraining order.

1

attending a Master Calendar Hearing in his immigration case. Doc. 2 at 6. He was eventually transferred to the Otero County Processing Center in Chaparral, New Mexico, where he remains in custody. *Id.*

On March 17, 2026, Petitioner filed a Petition for Writ of Habeas Corpus ("Habeas Petition" or "Petition"). Doc. 1. In the Petition, Petitioner argues that he is being detained in violation of the Due Process Clause of the Fifth Amendment. *Id.* at 13-14. Petitioner states that he was previously released from immigration custody on an Order of Release on Recognizance and was, therefore, entitled to notice and a pre-deprivation hearing before a neutral decisionmaker before Respondents re-detained him. *Id.* at 8-9, 13-14. Petitioner asks the Court to order his immediate release from immigration custody and to prohibit Respondents from re-detaining him in the future without notice and a pre-deprivation hearing in which Respondents must prove, by clear and convincing evidence, that he is a danger to the community or a flight risk, and that no alternatives to detention would mitigate those risks. *Id.* at 14.

Also, on March 17, 2026, Petitioner filed an Emergency Motion for a TRO, in which Petitioner argues that the *status quo ante* is his release. Doc. 2 at 2. Both the Habeas Petition and Motion for TRO were served on Respondents. Doc. 3. In the Motion for TRO, Petitioner seeks his release from immigration custody within seven (7) days or, in the alternative, a bond hearing before an Immigration Judge ("IJ") within fifteen (15) days where the Department of Homeland Security ("DHS") bears the burden of demonstrating that Petitioner's removal is reasonably foreseeable, that Petitioner poses a danger and/or flight risk, and where the IJ must consider alternatives to detention. Doc. 2 at 5. Petitioner also asks the Court to prohibit Respondents from removing him, including to any third country, without constitutionally compliant procedures. *Id.* Finally,

Petitioner also asks the Court to prohibit Respondents from transferring him outside of the District of New Mexico. *Id.*

On March 18, 2026, the Court notified Respondents of its intent to rule on Petitioner's Emergency Motion for a TRO without a hearing. Doc. 4. The Court also ordered Respondents to submit a response to the Motion, if any, by Friday, March 20, 2026, at 5:00 PM. *Id.*

On March 20, 2026, Respondents filed their response to Petitioner's Motion. Doc. 6. In their response, Respondents argue that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A). *Id.* at 1-2. However, Respondents also acknowledge that this Court has reached the opposite conclusion in *Requejo Roman v. Castro*, --F.Supp.3d--, 2026 WL 125681 (D.N.M. 2026), which contains substantially similar facts as the facts before the Court in this case. *Id.* at 2. Respondents do not address Petitioner's argument that he was entitled to notice and a pre-deprivation hearing before Respondents re-detained him.

On March 24, 2026, Petitioner filed a reply. Doc. 7. In his reply, Petitioner notes that Respondents' response seems to address whether Petitioner is currently entitled to a bond hearing, rather than whether he was entitled to notice and a pre-deprivation hearing before Respondents re-detained him. *Id.* at 1-2.

**II.**
**FACTUAL FINDINGS**

Petitioner supported his Motion for TRO with the facts provided in his Habeas Petition and the Motion itself. *See* Docs. 1, 2. Petitioner also submitted various documents, including government documents pertaining to his immigration history and proceedings. *See* Docs. 1-1 to 1-5. Respondents did not provide any information to dispute the factual allegations contained in the Petition and Motion. *See* Doc. 6. Accordingly, at this stage of the litigation, the Court makes the following initial findings of fact concerning Petitioner's detention:

3

1.  Petitioner Lester Garcia Roman is a native and citizen of Cuba who entered the United States near San Ysidro, California, on April 15, 2022. Doc.1 at 6; Doc. 1-1 at 1. Since his entry, Petitioner has accrued no criminal history. Doc. 1 at 7.

2. Shortly after his entry, Petitioner encountered immigration officials, who detained him, and issued him a Notice to Appear. *Id.* at 7; Doc. 1-1 at 1. His Notice to Appear charges him as a noncitizen present in the United States who has not been admitted or paroled. *Id.*

3. Petitioner was released on an Order of Release on Recognizance on April 17, 2022. Doc. 1-2. Since his release from immigration custody, Petitioner has complied with all release requirements. Doc. 1 at 7.

4. Following his release from immigration custody, Petitioner established a life in the United States, residing in Atlanta, Georgia, and then in Odessa, Texas. Doc. 1-5. Petitioner notified DHS of his change of address. *Id.* His immigration case was transferred to El Paso, Texas.

5. Following his release, Petitioner also filed an Application for Asylum, Withholding of Removal, and for Withholding Under the Convention Against Torture. Doc. 2 at 6. He also filed an Application for Lawful Permanent Residency under the Cuban Adjustment Act. *Id.*; Doc. 1-3. He was issued an Employment Authorization Document, more commonly known as a work permit, pending relief. Doc. 1 at 7; Doc. 1-4.

6. On January 15, 2026, Petitioner was detained by ICE outside of EOIR in El Paso, Texas, after attending a Master Calendar Hearing in his immigration case. Doc. 2 at 6. He was eventually transferred to the Otero County Processing Center in Chaparral, New Mexico, where he remains in custody. *Id.*

### III.
### LEGAL STANDARDS

A temporary restraining order "preserve[s] the status quo [ante]" before a final decision on the merits. *Resolution Trust Corp v. Cruce*, 972 F.2d 1195, 1198 (10th Cir. 1992). The status quo ante is "the last peaceable uncontested status existing between the parties before the dispute developed." *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 798 n. 3 (10th Cir. 2019) (citation omitted).

To obtain a temporary restraining order, a petitioner "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief," and that the balance of equities and public interest weigh in his favor. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A petitioner seeking a temporary restraining order must demonstrate that "*all four* of the equitable factors weigh in [his] favor." *Sierra Club, Inc. v. Bostick*, 539 Fed. App'x 885, 888 (10th Cir. 2013). The likelihood-of-success and irreparable-harm factors are "the most critical" in the analysis. *People's Trust Fed. Credit Union v. Nat'l Credit Union Admin. Bd.*, 350 F. Supp. 3d 1129, 1139 (D.N.M. 2018) (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)). Regarding the irreparable-harm factor, "[w]hen an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1263 (10th Cir. 2016) (citations omitted). The balance-of-equities and public-interest factors "merge" where, like here, the government is the opposing party. *Nken*, 556 U.S. at 435.

## IV.
## DISCUSSION

### I.      Petitioner Is Likely to Succeed on the Merits

Petitioner argues that the Due Process Clause of the Fifth Amendment bars Respondents from re-detaining him without notice and hearing. Doc. 2 at 9-13. Courts analyze due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivations of that protected liberty interest accords with the Constitution. *See Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

### A.  Petitioner Possesses a Protected Liberty Interest

Turning to the first step—whether Petitioner possesses a protected liberty interest—this Court finds that there is a substantial likelihood that Petitioner will be able to show that his release from immigration custody in this case rises to the level of a protected liberty interest. As Petitioner notes, individuals may develop a protected liberty interest in their conditional release. Doc. 2 at 9 (citing *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). Courts have resolved the issue of whether a conditional release rises to the level of a protected liberty interest by comparing the release in the case to the liberty interest in parole in *Morrissey*. *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010). Comparing Petitioner's release from immigration custody in this case to the liberty interest in *Morrissey*, Petitioner's release from immigration custody enabled him to "to a wide range of things," including to work. 408 U.S. at 482. Indeed, Petitioner was released from immigration custody almost four years ago. During this time, he was issued a work permit, which is valid until February 20, 2029. Doc. 1-4.

B.  A Pre-Deprivation Hearing Was Required Before Petitioner Was Re-Detained

Having found that there is a substantial likelihood that Petitioner will be able to show a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. To determine such, the Court considers the three factors outlined in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976): 1) "the private interest that will be affected by the official action," 2) "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and 3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

Turning to the first *Mathews* factor, the Court finds there is a substantial likelihood that Petitioner can show that he has a significant private interest in remaining free from detention after being released from immigration custody. Doc. 2 at 13. As mentioned previously, Petitioner was out of immigration custody for almost four years prior to being re-detained by immigration officials.

Turning to the second *Mathews* factor, the Court finds that there is a substantial likelihood that Petitioner can show that risk of erroneous deprivation in this case is considerable, particularly here, where Petitioner was detained outside of EOIR. *Id.* at 6. Additionally, a pre-deprivation hearing serves to ensure that the purposes of detention—danger and flight risk—are properly served. *Id.* at 11 (citing *E.A.T.B. v. Wamsley*, 795 F.Supp.3d 1316, 1323 (W.D. Wash. 2025)).

Turning to the third *Mathews* factor, the Court finds that there is a substantial likelihood that Petitioner can show that Respondents' interest in placing him in detention is low. *Id.*

7

Petitioner has a pending Application for Asylum, Withholding of Removal, and for Withholding Under the Convention Against Torture, as well as a pending Application for Lawful Permanent Residency under the Cuban Adjustment Act. Doc. 2 at 6; Doc. 1-3. He has accrued no criminal history in the United States. Doc. 2 at 13. He has complied with all release requirements. *Id.* at 9.

On balance, the Court finds that there is a substantial likelihood that Petitioner, under the three *Mathews* factors, can show that he was entitled to a pre-deprivation hearing prior to being re-detained. Having found that there is a substantial likelihood that Petitioner can show a protected liberty interest, and that due process requires notice and a pre-deprivation hearing, the Court finds that Petitioner has established a substantial likelihood of success on the merits of his claim.

## II.    Petitioner Will Face Irreparable Harm Without Injunctive Relief

Turning to the second required showing for a temporary restraining order, the Court finds that Petitioner has demonstrated that his detention has caused and will continue to cause irreparable harm. The infringement of a constitutional right is enough to establish irreparable injury. *Free the Nipple-Fort Collins*, 916 F.3d at 805. Having found a substantial likelihood of success on the merits of Petitioner's procedural due process claim, Petitioner has established irreparable injury deriving from the violation of his procedural due process rights. "[N]o further showing of irreparable injury" is necessary. *Id.*

## III.    The Balance of Equities and Public Interest Weigh in Petitioner's Favor

Finally, Petitioner has demonstrated that the balance of the equities and the public interest weigh in favor of issuing the requested relief. When the government is the party opposing the requested temporary restraining order, the balance of equities and public interest merge. *Nken*, 556 U.S. at 435. First, the government has no interest in engaging in an unlawful practice. *See,*

8

*e.g., Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (citing *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983)). Moreover, any burden imposed by requiring Respondents to release Petitioner from custody until he is provided notice and a hearing is minimal compared to the weighty liberty interests at stake while he sits in detention. These considerations are persuasive and show that Petitioner's liberty interest in her conditional release outweighs any burden on the government to provide him with notice and a hearing. It is also in the public interest to release Petitioner to promote Respondents' compliance with our Constitution and laws.

**V.**
**CONCLUSION**

In conclusion, the Court finds that the requirements for issuing a temporary restraining order are met. The Court also finds that the status quo ante is the position that Petitioner was in prior to his re-detention by ICE. Accordingly, **IT IS ORDERED** that:

1. Petitioner's request for a temporary restraining order is **GRANTED IN PART**;

2. Respondents are **ORDERED** to release Petitioner within twenty-four (24) hours of this Order;

3. Respondents are **RESTRAINED** from re-detaining Petitioner unless they provide Petitioner with notice and demonstrate, by clear and convincing evidence at a pre-deprivation hearing before a neutral arbiter, that Petitioner is a danger or flight risk; and

4. This Order, for good cause shown, shall remain in effect until the resolution of the merits of the habeas petition. *See* FED. R. CIV. P. 65(b)(2).

**IT IS SO ORDERED.**

_____
HONORABLE DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE

9